IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Nicholas Britt,        :
      Petitioner   :
             :
    v.        :  No. 1121 C.D. 2024
             :
Unemployment Compensation  :  Submitted: July 7, 2025
Board of Review,      :
      Respondent  :


BEFORE: HONORABLE PATRICIA A. McCULLOUGH, Judge
     HONORABLE STACY WALLACE, Judge
     HONORABLE MARY HANNAH LEAVITT, Senior Judge


***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH      FILED: August 13, 2025


    Nicholas Britt (Claimant), *pro se,* petitions this Court for review of the July 31, 2024 order of the Unemployment Compensation Board of Review (Board), which affirmed the Referee's decision dismissing his appeal as untimely pursuant to Section 501(e) of the Unemployment Compensation Law[1] (Law). After review, we affirm.


## I. Background

    The relevant facts and procedural history of this case are as follows. Claimant worked as a chiropractor for Natural Health Chiropractic (Employer) from

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 821(e) (prescribing a 21-day appeal period).

May 6, 2021, until September 3, 2022. (Certified Record (C.R.), Item No. 1 at CR008.) After Claimant had worked for Employer for approximately one year, Employer informed Claimant that his pay would be reduced by approximately 25 percent. Claimant did not wish to continue working at the new rate of pay and left his employment. (Claimant's Br., at 6.) Claimant applied for unemployment compensation (UC) benefits with the Department of Labor and Industry (Department) on July 18, 2023, and stated that his preferred method of receiving notifications from the Department was "Internal Message with Email Notification." (C.R., Item No. 1 at CR003, CR005.) He also provided the Department with a mailing address.

On July 27, 2023, the Department issued Claimant a check, representing 26 weekly payments for the period from January 14, 2023, through July 15, 2023. (C.R., Item No. 1 at CR016-CR018.) On January 25, 2024, the Department issued a notice of determination denying Claimant benefits under Section 402(b) of the Law, based upon its finding following an investigation, that Claimant voluntarily left his employment because of personal or other reasons.[2] (C.R., Item No. 3 at CR033.) The Department also issued notices finding a fault overpayment,[3] and imposing penalties on Claimant.[4] The notices of determination advised Claimant of the applicable 21-day appeal period and that the final date to timely appeal the decisions was February 15, 2024. (CR, Item No. 3 at CR033.) The Determinations also provided detailed appeal instructions. (C.R., Item No. 3 at CR034-CR041.) Claimant filed his appeal on

---

[2] Section 402(b)(2) of the Law provides that an employee is ineligible for UC benefits for any week in which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature. 43 P.S. § 802(b).

[3] Claimant received his fault overpayment determination pursuant to Section 804(a) of the Law, 43 P.S. § 874(a).

[4] Penalties were imposed pursuant to Section 801(b) & (c) of the Law, 43 P.S. § 871 (b) & (c).

2

February 16, 2024, which was one day after the appeal period lapsed, and the matter was referred to a Referee for disposition. (C.R., Item No. 6 at CR059-CR060.)

On May 3, 2024, the Referee conducted a hearing to consider Claimant's appeals. (C.R., Item No. 11 at CR131.)[5] Both Claimant and Employer testified at the hearing. (Notes of Testimony (N.T.) at 1.) The first issue considered by the Referee was whether Claimant filed a timely and valid appeal from his disqualifying determination. (N.T. at 11.) Claimant testified that he did not receive the notices of determination sent to his mailing address,[6] but admitted that he received and read the electronically sent notifications. Claimant testified that he first read the notices "around the 15th [of February], but maybe a day or two prior." (N.T. at 13.) The Department's UC Benefits System Email Log indicates that the notices were successfully and timely sent on January 25, 2024, to the email address provided to the Department in Claimant's UC Claim Application. (C.R., Item No. 1 at CR004 & Item No. 3 at CR047-CR048.) Therefore, it appears the notices sat unopened in Claimant's inbox from January 25, 2024, until approximately February 15, 2024.

Claimant testified that while he received and read the emailed notices of determination, he didn't fully understand them. (N.T. at 14.) He further testified that

---

[5] The hearing covered all three determinations related to Claimant. The appeals were docketed as 202403296-RO; 2024017021-RO; and 2024017025-RO. Only the Department's initial disqualifying determination, docketed at 202403296-RO, was appealed to this Court.

[6] Claimant explained that he received his mail at his parent's mailing address, although he did not live there. When the Referee attempted to confirm Claimant's testimony that he did not receive a mailed copy of the notice, Claimant stated:

C: Yes, but again, I don't know if that's because it wasn't – never received it, or if there was a breakdown on my end with – I don't know if my parents misplaced it, or – I just – I haven't –I haven't seen it.

(N.T. at 13.)

upon reading the notices, his first action was to try calling the Department to request assistance. (N.T. at 13-14.) He testified that "I called a few times a few days in a row. That's when I spoke to someone at the office. Then she walked me through my options and how to appeal." (N.T. at 13-14.) When the Referee asked Claimant if he read the determinations, Claimant stated that he had. (N.T. at 14.) Later the Referee asked Claimant,

> R. [D]id you read the Appeals Case Information on any of these where it talks about the Appeal instructions? Did you see – for example at UC 2, it says you may file your Appeal online on the department electronic – well, Unemployment system, by completing the Petition for Appeal form included with your determination, and mailing, faxing, or e-mailing the Petition for Appeal to the department – by mailing, faxing or e-mailing an[] Appeal letter to the department, or in person at a PA CareerLink. Did you read any of that?
>
> C: Not at the time. The first I heard of it – how to appeal or what to do was when I – when I talked to the woman.

(N.T. at 14-15.)

The Referee issued a decision on May 10, 2024, dismissing Claimant's appeal as untimely. (C.R., Item No. 12 at CR182-87.) In doing so the Referee explained:

> In the present case there is no competent evidence in the record to establish that [Claimant] filed the appeals within the 21-day appeal period. Moreover, [Claimant] did not provide sufficient credible testimony to establish that [Claimant] filed the appeals within the 21-day appeal period, that fraud or a breakdown in the administrative process caused the appeals to be filed late, or that the party or the party's representative or attorney caused the appeals to be late through non-negligent conduct.

4

The provisions of this section of the Law are mandatory, and the Referee has no jurisdiction to allow any appeal filed after the expiration of the statutory appeal period. Therefore, [Claimant's] appeals are dismissed.

(C.R., Item No. 12 at CR183-86.)

Claimant appealed to the Board, which affirmed the Referee's decision. In its decision, the Board explained:

The [Board], after considering the entire record in this matter, concludes that the determination made by the Referee [] is proper under the [Law]. Therefore, the Board adopts and incorporates the Referee's conclusions and findings of fact.

In his appeal, [Claimant] argues that he believes a breakdown in the administrative process occurred because he did not receive his disqualifying determination in the mail. At the hearing, [Claimant] testified that he filed his appeal late because he did not get his determinations in the mail at his correct address. [Claimant] further testified that he was periodically checking his online portal and email, and that he saw the disqualifying determinations prior to the appeal deadline. The evidence in the file shows that [Claimant] elected to receive communications regarding his unemployment claim by internal message with email notification. The record indicates that the disqualifying determination was properly sent to [Claimant] through internal message with email notification in a timely manner and was not returned as undeliverable.

The provisions of Section 501(e) of the Law are mandatory; the Board and its referees have no jurisdiction to allow an appeal filed after the expiration of the statutory appeal period absent limited exceptions not relevant herein. [Claimant] provided no evidence that the filing of the late appeal was caused by fraud or its equivalent by the administrative authorities, a breakdown in the appellate system, or by non-negligent conduct.

5

(C.R., Item No. 15 at CR209-10.)

## II. Issues

Claimant challenges the Board's decision to dismiss his appeal as untimely. First, Claimant argues that should the Court determine that his appeal was untimely, he should be allowed to appeal his disqualifying determination *nunc pro tunc.* (Claimant's Br., at 5.) Claimant maintains that the fact that he filed his appeal one day late should be excused because he did not receive notice of the determinations until on or about February 15, 2024, which is when he checked his electronic mail on the Department's UC website, the day of the appeal deadline. (Claimant's Br., at 7-11.) He claims that he attempted to contact the Department for assistance with understanding the meaning of the determinations, but was unable to get through to a Department representative to have his questions addressed until February 16, 2024, the day he filed his appeal. *Id.*

Second, Claimant argues that at the hearing before the Referee, he contested that the notices of determination were ever mailed and therefore the Referee erred when he applied the mailbox rule,[7] without further evidence in the record to prove that the notices were actually mailed. *Id.* at 10. Third, Claimant argues that the Board erred in finding that electronic service of the notices of determination satisfied the Department's notice requirement. *Id.* at 12.

---

[7] The mailbox rule is a common law doctrine that provides that the depositing in the post office of a properly addressed letter with prepaid postage creates a rebuttable presumption that the item mailed reached its destination by due course of mail. Thus, under the "mailbox rule," evidence that a letter has been mailed ordinarily will be sufficient to permit a factfinder to find that the letter was, in fact, received by the party to whom it was addressed. *In re Rural Route Neighbors*, 960 A.2d 856, 861 (Pa. Cmwlth. 2008).

### III. **Discussion**[8]

A. Relevant Legal Principles

Section 501(e) of the Law requires claimants to file an appeal within 21 days of receiving a notice of determination from the Department. 43 P.S. 821(e).[9] Failure to file a timely appeal as required by Section 501(e) is a jurisdictional defect and the time period cannot be extended as a matter of grace. *Carney v. Unemployment Compensation Board of Review*, 181 A.3d 1286, 1288 (Pa. Cmwlth. 2018). "Therefore, an appeal filed one day after the expiration of the statutory appeal period must be dismissed as untimely." *Dumberth v. Unemployment Compensation Board of Review*, 837 A.2d 678, 681 (Pa. Cmwlth. 2003).

In order to justify an exception to the appeal deadline in the form of *nunc pro tunc* relief, a claimant must demonstrate that his delay in filing resulted from extraordinary circumstances involving fraud, a breakdown in the administrative process, or non-negligent circumstances relating to the claimant. *Harris v. Unemployment Compensation Board of Review*, 247 A.3d 1223, 1229 (Pa. Cmwlth. 2021). An administrative breakdown occurs when an administrative body acts

---

[8] "This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence." *Rivera v. Unemployment Compensation Board of Review*, 310 A.3d 348, 352 n.4 (Pa. Cmwlth. 2024). In UC cases, the Board is the ultimate factfinder and it resolves issues of credibility. *Id.*

[9] This provision states, in pertinent part:

> (e) Unless the claimant . . . files an appeal with the board, from the determination contained in any notice required to be furnished by the department under section five hundred and one (a), (c) and (d), no later than [21] calendar days after the 'Determination Date' provided on such notice, and applies for a hearing, such determination of the department, with respect to the particular facts set forth in such notice, shall be final and compensation shall be paid or denied in accordance therewith.

43 P.S. § 821(e).

negligently, improperly, or in a misleading manner. *Id.* Additionally, "the burden of demonstrating the necessity of *nunc pro tunc* relief is on the party seeking to file the appeal, and the burden is a heavy one." *Id*.

### B. Whether the Appeal was Timely Filed

#### 1. Mailbox Rule

Claimant argues that the Referee erred when he found that "the Notices of Determination were mailed to Employee on January 25, 2024, invoking the Mailbox Rule, and **setting an appeal deadline of February 15, 2024."** (Claimant's Br., at 11) (emphasis added). Claimant appears to be arguing here that his appeal was not untimely, because the true appeal deadline in this case was not February 15, 2024. This argument only makes sense if one assumes that Claimant is basing his argument on a previous version of Section 501(e) of the Law, which is now superseded.[10] Therefore, this argument is inapposite to the current situation.

More importantly, while the Referee referred to the mailbox rule in his decision, Claimant is appealing the decision of the Board, which did not rely on the mailbox rule in its determination. On the issue of Claimant's notice, the Board found that Claimant had sufficient notice of the determinations, stating in pertinent part:

> [Claimant] [] testified that he was periodically checking his online portal and email, and that he saw the disqualifying determinations prior to the appeal deadline. The evidence in the file shows that [Claimant] elected to receive communications regarding his unemployment claim by internal message with email notification. The record indicates that the disqualifying determination was properly

---

[10] The previous version of Section 501(e) provided that an appeal must be filed "within fifteen calendar days after such notice was delivered to him personally, **or was mailed** to his last known post office address. 43 P.S. § 821(e)." *Renda v. Unemployment Compensation Board of Review,* 837 A.2d 685, 695 (Pa. Cmwlth. 2003) (emphasis added). *See also Roman-Hutchinson v. Unemployment Compensation Board of Review*, 972 A.2d 1286, 1287 n.1 (Pa. Cmwlth. 2009) (holding that **if an appeal is not filed within fifteen days of the determination's mailing date,** the Board and its referees do not have jurisdiction to rule on the merits of the case) (emphasis added).

8

sent to [Claimant] through internal message with email notification in a timely manner and was not returned as undeliverable.

(C.R., Item No. 15 at CR210.)

Therefore, as the Board found, the evidence of record establishes that Claimant elected to receive communications regarding his unemployment claim by internal message with email notification and after notice was sent to Claimant on January 25, 2024, Claimant did not read it until February 15, 2024. (C.R., Item No. 15 at CR209-CR210.) Claimant does not deny that he received the email notification. The fact that Claimant may not have opened the email until February 15, 2024 is of no moment. Therefore, there was ample proof that the emailed notices were properly sent in accordance with the instructions provided to the Department by Claimant and that Claimant had notice of the determinations and of his need to file an appeal if he disagreed with them.

### 2. Electronic Notice

Claimant next argues that the Board erred in finding that electronic service of the notices of determination satisfied the Department's notice requirement in this case because Claimant argues that "the record does not support a finding that [Claimant] had an election for electronic notices effective on January 27, 2024." (Claimant's Br., at 12.) We disagree. In Claimant's application for UC benefits, *filed on July 18, 2023*, Claimant stated that his preferred method of receiving notifications from the Department was "Internal Message with Email Notification." (C.R., Item No. 1 at CR005.) Therefore, the evidence of record contradicts Claimant's assertion that he had not elected to receive electronic notices at the time the determination was issued. Because Claimant has failed to demonstrate that his appeal was timely, we now turn to his argument that this Court should allow him to appeal his disqualification notification *nunc pro tunc.*

9

C. <u>Whether Claimant is Entitled to Appeal *Nunc Pro Tunc*</u>

As noted above, the burden of demonstrating the necessity of *nunc pro tunc* relief is on the appellant. "An appellant may satisfy this heavy burden in one of two ways. First, he can show the administrative authority engaged in fraudulent behavior or manifestly wrongful or negligent conduct. Second, he can show non-negligent conduct beyond his control caused the delay." *Hessou v. Unemployment Compensation Board of Review*, 942 A.2d 194, 198 (Pa. Cmwlth. 2008) (internal citations omitted). However, a claimant requesting *nunc pro tunc* relief in an appeal based on non-negligent grounds must proceed with reasonable diligence once the claimant learns of the necessity to act.

### *1. Fraud or Breakdown in the Administrative Process*

Here, Claimant has failed to make a showing that his appeal was untimely filed due to fraud or a breakdown in the administrative process. The record evidence establishes that the Department provided the notices to Claimant in a timely manner and in accordance with Claimant's specific instructions. The Department emailed the notices to Claimant's email address on January 25, 2024, which was the day the notice was issued. The notices provided instructions regarding how to file an appeal and informed Claimant of the deadline for filing a timely appeal. Claimant now argues that a breakdown in the administrative process occurred in his case because there was a period of five months between the Department's initial approval of Claimant's UC benefits claim and the Department's decision disqualifying Claimant from receiving benefits.

We disagree that a five-month delay between the Department's approval of Claimant's UC claim and its issuance of its disqualifying determination constitutes fraud or breakdown in the administrative process. Section 501(c)(1) of the Law provides that "[t]he [D]epartment shall promptly examine each claim for waiting week credit and each claim for compensation and on the basis of the facts found by it shall

10

determine whether or not the claim is valid." 43 P.S. § 821(c)(1). While the statute directs the Department to act "promptly" when examining UC claims, it does not provide a specific deadline.

Claimant cites an unpublished opinion of this Court, *Byrd v. Unemployment Compensation Board of Review* (Pa. Cmwlth., Nos. 1231-1233 C.D. 2019, filed February 4, 2021), 2021 WL 394616, in making his argument that an undue delay in issuing a disqualifying determination can be the basis for allowing a Claimant to appeal the determination *nunc pro tunc.* But the *Byrd* case is easily distinguishable from the present case. In *Byrd*, the Department failed to inform the claimant's separating employer of the claimant's claim for benefits for five years, during which time the claimant moved several times. When the Department eventually mailed its determinations to the claimant, the claimant did not receive them because the determinations were not sent to her current address. The claimant eventually contacted the Department and learned of the determinations and filed a late appeal, which the Board dismissed as untimely. On appeal to this Court, we reversed the Board's orders denying *nunc pro tunc* relief. *Byrd*, Slip Op. at 5.

In contrast to the situation in *Byrd*, here, the Department timely informed Employer of Claimant's claim and the Department issued its determination five months later, rather than five years later. In addition, unlike the situation in *Byrd*, in the present case Claimant received the notices of determination before his appeal period had expired and the Department did not deprive Claimant of the ability to file a timely appeal. Therefore, in this case, we find no administrative breakdown that operated to prevent Claimant from filing a timely appeal.

### 2. *Non-negligent Circumstances*

Claimant next argues that he should be allowed to appeal *nunc pro tunc* due to non-negligent circumstances. Claimant argues that as soon as he read the notices of determination on approximately February 15, 2024, he made good faith attempts to

11

contact the Department, then filed the appeal soon afterward. Because his appeal was filed only one day late, Claimant argues that the Board was not prejudiced by this brief delay and therefore, Claimant should be allowed to appeal his disqualification notice *nunc pro tunc.* (Claimant's Br., at 14.)

We disagree that Claimant has met his heavy burden of proof to show that he filed his appeal late due to non-negligent circumstances. As noted, Claimant admitted before the Referee that he did in fact receive and view the determination by the appeal deadline.[11] Critically, the evidence shows that the email was sent on January 25, 2024, but Claimant did not check his email or open it until approximately February 15, 2024. Moreover, when Claimant did view the determination, he testified before the Referee that he did not read the appeal instructions contained therein. The hearing transcript contains this aforementioned colloquy:

> R. [D]id you read the Appeals Case Information on any of these where it talks about the Appeal instructions? Did you see – for example at UC 2, it says you may file your Appeal online on the department electronic – well, Unemployment system, by completing the Petition for Appeal form included with your determination, and mailing, faxing, or e-mailing the Petition for Appeal to the department – by mailing, faxing or e-mailing an[] Appeal letter to the department, or in person at a PA CareerLink. Did you read any of that?

> C: Not at the time. The first I heard of it – how to appeal or what to do was when I – when I talked to the woman.

(N.T. at 15.) Therefore, the record evidence demonstrates that Claimant received the determinations prior to the expiration of the appeal period, but neglected to read the

---

[11] Claimant testified before the Referee that around the time the notices of determination were issued, he was checking the unemployment website approximately once a month. (N.T at 13.) He also testified that he received the notices on February 15, 2024, "but maybe a day or two prior." *Id.*

appeal instructions until after the appeal period had expired. We cannot agree with Claimant that this does not constitute non-negligent conduct. A Claimant requesting *nunc pro tunc* relief in an appeal involving non-negligent grounds must proceed with reasonable diligence once he learns of the necessity to act and "[a] claimant's failure to notice the appeal deadline in a UC determination does not constitute a non-negligent circumstance justifying an untimely appeal." *Carney*, 181 A.3d at 1288.

In *Constantini v. Unemployment Compensation Board of Review*, 173 A.3d 838 (Pa. Cmwlth. 2017), a claimant filed an untimely appeal from a denial of her UC benefits. She received the notice of determination on June 8, 2016, and the notice informed her that the last day for her to file an appeal of the determination was June 20, 2016. Like Claimant here, the claimant in *Constantini* admitted that she read the determination but that she never saw the appeal deadline of June 20, 2016, noted on the determination. When the Board dismissed the claimant's untimely appeal, this Court agreed with the Board's action because we found that "the late appeal was clearly attributable to Claimant's *own* negligence." *Constantini,* 173 A.3d at 845 (emphasis in original). We stated that "Claimant received explicit appeal instructions with the determination, which included a specific deadline, but Claimant *chose not to read* the determination or information provided." *Id.* (emphasis in orginal).

In this case, Claimant admitted that he did not read the notices of determination once he received them, but instead spent several days attempting to speak with a representative of the Department about the appeal process. (N.T. at 13-14.) As this Court has previously held, the failure to understand appeal procedures does not warrant a late appeal. *Finney v. Unemployment Compensation Board of Review*, 472 A.2d 752, 753-54 (Pa. Cmwlth. 1984). Finally, we note that the Board expressly found that "[Claimant] provided no evidence that the filing of the late appeal was caused by . . . non-negligent conduct." (C.R, Item No. 15 at CR210.) "In unemployment compensation cases, the Board is the ultimate factfinder. The Board's findings are

conclusive on appeal so long as the record, taken as a whole, contains substantial evidence to support those findings." *Hessou*, 942 A.2d at 198.

## IV.  Conclusion

Based on the foregoing, we conclude that the record fully supports the Board's decision.  This case involves no extraordinary circumstances warranting *nunc pro tunc* relief.  Accordingly, we affirm the Board's order affirming the Referee's decision under Section 501(e) of the Law.

_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Nicholas Britt,       :
    Petitioner    :
           :
   v.       :  No. 1121 C.D. 2024
           :
Unemployment Compensation  :
Board of Review,     :
    Respondent   :

## ***ORDER***

AND NOW, this 13th day of August, 2025, the July 31, 2024 Order of the Unemployment Compensation Board of Review is hereby AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge